738 So.2d 1087 (1999)
STATE of Louisiana
v.
Mitchell ARRINGTON.
No. 97-KA-2059.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 1999.
*1088 William R. Campbell Jr., Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Harry F. Connick, District Attorney, Theresa A. Tamburo, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge MOON LANDRIEU.
PLOTKIN, Judge.
On August 23, 1995, the defendant, Mitchell Arrington, was charged by bill of information with aggravated battery, a violation of La. R.S. 14:34. At his arraignment on August 28, 1995, the defendant entered a plea of not guilty. After a jury trial on January 17, 1996, the defendant was found guilty as charged. A multiple bill hearing was held on April 15, 1996. The defendant was adjudicated a second felony offender and sentenced to eight years at hard labor.

STATEMENT OF FACTS:
Ella Arrington, the defendant's wife, testified that the defendant attacked her with a knife on the evening of May 27, 1995. On that evening, she and defendant were at her house and were discussing a divorce. The victim stated that she had not gotten a divorce yet because she could not afford the cost. During this conversation, the defendant had been lying down on the sofa in the living room. The defendant got up from the sofa, walked towards the front door, closed the door and then walked back towards the victim. When the defendant got halfway towards her, the victim saw the knife in the defendant's hand. The victim grabbed the defendant's hand and attempted to hold onto the knife. However, the defendant was able to cut her in the neck. The defendant tried to stab her again. They struggled for about ten minutes. When the knife fell out of the defendant's hands, the defendant started choking the victim. The defendant was choking the victim when her neighbors arrived; they were able to pull the defendant off of her. The victim stated she did not provoke the defendant. She did not have a weapon and she did not threaten the defendant. At trial, the victim identified the knife that the defendant used to cut her. The tip of the knife had dried blood on it.
The victim further testified that a similar incident occurred in September of 1994. That time, the victim was working outside in the yard when the defendant yelled at her to come inside. The victim stated that she would not come inside until the defendant learned how to speak to her. The defendant got a knife off of the coffee table and came after her. The defendant caught the victim and dragged her into the house. He was attempting to stab the victim with the knife. The defendant threatened to kill her. When the police arrived, the defendant was sitting on her chest. The defendant was arrested for aggravated battery. He pled guilty and was sentenced to six months in jail. He got out of *1089 jail on March 28, 1995. Again, the victim stated she did not provoke the defendant.
Nikia Arrington, the defendant's daughter, testified that her father stabbed her mother in the neck. On the evening of May 27, 1995, Nikia was sitting in her bedroom when she heard her father knocking on the door. Her mother let her father into the house. The defendant went to the bathroom and then lay on the sofa in the living room. Nikia then went into her mother's bedroom. The defendant asked Nikia to go into her bedroom. She refused. The defendant got up, slammed the bedroom door, and got knife from the toolbox in the living room. The defendant tried to rip the telephone cord out of the wall as he approached Nikia's mother with the knife. Nikia's mother was trying to hold the defendant's hand with both of her hands to keep the knife away from her. Nikia was holding her father by the back of his shirt and trying to pull him off of her mother. When Nikia could not get the defendant off of the victim, she ran next door and sought help from her neighbors. Several of the neighbors came to help. Nikia saw the defendant purposely cut her mother with the knife. Nikia's mother did not have anything in her hands. The neighbors tried to get the defendant off of the victim. The defendant did not want to let the victim go. They had to rip the victim's shirt in order to get her away from the defendant. The neighbors took the victim and Nikia next door and called the police. When the police came, the officers could not find the defendant. The officers spoke with Nikia and her neighbors. A few minutes later, Nikia's brother came home from work. Her neighbors had called and told him about the incident. Nikia's brother, Jamoine, found the defendant hiding in their mother's closet. When the defendant and Jamoine started fighting, the neighbors called the police again.
Nikia spoke with the police officers after they arrived in response to the call about the attack on her mother. She told the officer that the defendant was trying to cut her mother in the neck with a knife. The defendant would come by the house every day. On the evening in question, her mother was playing Nikia's gameboy when the defendant approached her with the knife. Nikia's mother dropped the gameboy when she realized the defendant was coming after her. Nikia's mother slipped on the gameboy and fell. At that point, the defendant grabbed the victim by the neck. Her mother did not throw the gameboy at the defendant.
Nikia also testified as to a previous incident that occurred in 1994 when her father attacked her mother with a knife. One day in September of 1994, Nikia's mother was working outside in the yard when her father yelled at her mother to come inside. Nikia's mother refused to go inside. The defendant found a knife in the kitchen and went after Nikia's mother with the knife. He caught and dragged her inside the house. The neighbors called the police. When the police arrived, the defendant was on top of the victim trying to stab her. Nikia's mother did not do anything to provoke the defendant.
On May 27, 1995, New Orleans Police Officer Todd Thedy and his partner were dispatched to 2824 Banks Street in response to a call of a domestic disturbance. The officer was met at the residence by a young girl who informed the officers that her father had stabbed her mother. The mother had been taken to Charity Hospital for treatment. Officer Thedy interviewed the girl and several neighbors. After securing the scene, the officers went to Charity Hospital and spoke with the victim. The officers learned the defendant's name and subsequently obtained an arrest warrant. While the officers were obtaining the arrest warrant for the defendant, they overheard another police vehicle being dispatched to the same address. When Officer Thedy and his partner returned to the scene, they observed the defendant in an altercation with his adult son. The police officers that had been dispatched to handle this altercation had to separate the two men.
*1090 A search of the crime scene was conducted. A black plastic handled Phillips screwdriver and a four-inch steel blade utility knife with some dried blood on the tip of it were found. The knife was found partially under the sofa in the living room. The screwdriver was found next to a toolbox in the living room.
Officer Oliver Sandifer participated in the defendant's arrest. Sandifer and his partner responded to a call of a domestic disturbance at 2824 Banks Street. When they arrived at the scene, the officers observed two black males involved in a physical altercation. The defendant bit the other man, later determined to be his son, on the forehead. The officers exited their vehicle and separated the two men. The defendant resisted the officers' attempt to separate him from his son. The defendant struggled with the officers and resisted the officers' attempts to restrain him. Officer Sandifer identified the defendant at trial. The officer did not notice any injuries on the defendant. After arresting the defendant, the officers transported the defendant to Central Lockup.
The defendant, Mitchell Arrington, testified that he went to the victim's house on May 27, 1995, to get something to eat. He stated that the victim was supposed to be fixing dinner for him every day. He was giving the victim his food stamps and money for food because he did not have a stove and refrigerator where he was living. Every morning and afternoon he would go over to the victim's house and prepare breakfast and lunch for himself. After work, he would go back to her house and stay there until she got home from work so their daughter would not be alone in the house. On the evening in question, the defendant asked the victim why she had not cooked supper. She stated that she did not cook because she was tired. The telephone then rang. The victim answered the telephone, mumbled something and hung up. The defendant told her that he thought it was Arthur Lee on the telephone. He accused the victim of having an affair with Lee. The victim denied his accusations. The defendant then asked the victim about the divorce. According to the defendant, the victim responded that she was not paying for a divorce. She would rather see the defendant rot in jail. The victim then allegedly threw a Nintendo gameboy at him and hit him in the back. The defendant armed himself with a screwdriver. The victim picked up a knife and cut the defendant across the stomach. The victim swung at him again. He hit her hand, and she cut herself. The knife then fell out of her hand. The defendant started choking the victim. Nikia, the defendant's daughter, was there when the incident occurred. She ran out of the house while he and the victim were struggling. Neighbors came in the house and pulled him off of the victim. The defendant admitted to pleading guilty to the charge of aggravated battery in 1994 but contended that he did not stab the victim.

ERRORS PATENT:
A review of the record for errors patent reveals that the trial court imposed an illegally lenient sentence on the defendant. After adjudicating the defendant a second felony offender, the trial court sentenced the defendant to eight years at hard labor. However, the trial court failed to state that the sentence was to be served without benefit of probation or suspension of sentence as required by La. R.S. 15:529.1. However, the court did not suspend any portion of the sentence or place the defendant on probation so the issue is moot. In any event, on appeal this Court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122, 124 (La.1986).

ASSIGNMENT OF ERRORS 1-3:
In these assignments of error, the defendant contends that the trial court erred when it allowed evidence of defendant's prior attack on the victim that occurred in 1994. The defendant also argues that the trial court allowed inadmissible other crimes evidence of the defendant's *1091 struggle with police officers upon his arrest.
La. C.E. article 404(B) allows for the introduction of other crimes evidence in certain situations:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Before evidence of other crimes is admitted as proof of intent, three prerequisites must be satisfied: (1) the acts must be similar, (2) there must be a real genuine contested issue of intent at trial, and (3) the probative value of the evidence must outweigh its prejudicial effect. State v. Romero, 574 So.2d 330, 336 (La.1990); State v. Kahey, 436 So.2d 475, 488 (La. 1983). In addition, there must first be clear and convincing evidence of the commission of the other crimes and the defendant's connection with them. State v. Hatcher, 372 So.2d 1024, 1033 (La.1979); State v. Prieur, 277 So.2d 126, 129 (La. 1973), State v. Gibson, 511 So.2d 799, 801 (La.App. 4 Cir.1987), writ denied, 514 So.2d 1174 (La.1987). Further, where the testimony shows that the factual circumstances of the prior acts and the crime charged are virtually identical, the evidence of the other crimes is corroborative of the victim's testimony and establishes a system or plan. State v. Johnson, 96-0950 (La.App. 4 Cir. 8/20/97), 706 So.2d 468, 477, writ denied, 98-0617 (La.7/2/98), 724 So.2d 203, cert. denied, Johnson v. Louisiana, ___ U.S. ___, 119 S.Ct. 1054, 143 L.Ed.2d 60, 67 USLW 3526 (1999); State v. Tolliver, 621 So.2d 17, 19 (La.App. 2 Cir.1993).
In the present case, the state introduced evidence of a prior aggravated battery committed by the defendant upon his wife in 1994. The victim and her daughter testified as to the offense. Defendant admitted he pled guilty to the criminal charge of aggravated battery that arose from the incident and served six months in jail for the offense. There was clear and convincing evidence that the defendant attacked and stabbed the victim in September of 1994. In addition, the present offense and prior offense are strikingly similar. On both occasions, the defendant, enraged without provocation, attacked his wife with a knife. He stabbed her and attempted to strangle her. Third parties had to remove the defendant from the victim. Thus, the trial court did not err when it allowed testimony concerning the prior offense into evidence.
The defendant also objected to the police officers' testimony concerning the defendant's struggle with them when they attempted to arrest him. Officer Sandifer testified that when he and his partner arrived on the scene the defendant was involved in a scuffle with his son. The defendant resisted the officers' attempt to separate him from his son and continued to struggle with the officers when they arrested him.
In his brief, defense counsel alleges that the crime of resisting arrest was refused by the State. He also argues that defense counsel repeatedly objected to the testimony regarding the charge of resisting arrest. While defense counsel may have objected, the resisting arrest charge was not refused. Concurrent with the charge of aggravated battery, defendant was being tried for the misdemeanor, resisting an officer, pursuant to La. R.S. 14:108. The docket master for that case clearly reflects that in case # 378-206, the defendant was charged and tried for a *1092 violation of La. R.S. 14:108, and found not guilty by the trial court.
Moreover, the transcript of the instant aggravated battery charge clearly states:
MR. PICKENS:
That's fine, Judge. And, Judge, do you want to rule on the misdemeanor?
THE COURT:
Yes. The Court finds the Defendant not guilty in resisting arrest.
MR. PICKENS:
Not guilty?
THE COURT:
Yes. They had a little difficulty putting the handcuffs on him, but I thought the evidence was not proof beyond a reasonable doubt.
Moreover, the final phrase in La. C.E. article 404(C) replaces the term "res gestae" as provided for in former La. R.S. 15:447-448. Evidence of other crimes is admissible when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Brewington, 601 So.2d 656, 657 (La.1992). The concomitant other crimes do not affect the defendant's character because they were done, if at all, as parts of a whole; thus, the trier of fact will attribute either all of the criminal conduct to the defendant or none of it. Id. Additionally, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. Id. In State v. Parker, 96-1852 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, writ denied, 97-1953 (La.1/9/98), 705 So.2d 1097, the defendant's use of the victim's credit cards several hours after the victim's murder was determined to be part of the res gestae of the murder.
In the case at bar, Officer Sandifer's testimony is admissible under the res gestae exception as the defendant's arrest occurred shortly after his attack on the victim. The defendant's belligerent attitude began with the attack on the victim and continued during his encounters with his son and the police officers. Thus, the trial court did not err when it admitted evidence of the defendant's struggle with the police.
These assignments are without merit.

ASSIGNMENT OF ERROR 4:
The defendant further contends that the trial court refused to allow him to impeach the Nikia Arrington's testimony that the defendant was armed with a knife. According to the defendant, Nikia originally told the police officer that the defendant was armed with a screwdriver. The police report indicates that the defendant was armed with a screwdriver. However, at trial, Nikia testified that the defendant was armed with a knife and used a knife to stab her mother. Nikia did not identify the knife found on the premises as the knife used by the defendant. On cross-examination, Nikia denied telling the police officer that the defendant was armed with a screwdriver. She stated that she told the officer the defendant was armed with a knife. After Nikia's testimony, the defendant sought to have the jury review the police report. The trial court refused the defendant's request to publish the report to the jury. The trial court held that the police report was not admissible as the defendant had failed to establish a foundation for the prior inconsistent statement. The defendant complains that the trial court's refusal to introduce the report into evidence prevented him from impeaching Nikia's testimony.
La. C.E. article 607(D) provides that
[o]ther extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
Before extrinsic evidence of a prior inconsistent statement is admissible, the proper foundation must be laid. La.C.Cr.P. art. *1093 613. This foundation requires that the time, place and circumstances of the making of the prior inconsistent statement be called to the witness' attention and the witness be given opportunity to admit or deny having made the prior statement. The witness' denial of making the prior statement completes the foundation. Busby v. St. Paul Ins. Co., 95-2128 (La.App. 1 Cir. 5/10/96), 673 So.2d 320, 327, writ denied, 96-1519 (La.9/20/96), 679 So.2d 443; State v. Jones, 94-0926 (La.App. 4 Cir. 12/28/94), 648 So.2d 472, writ denied, 95-0272 (La.6/15/95), 655 So.2d 346.
In the present case, the witness, Nikia Arrington, testified that she spoke with Officer Thedy when he arrived on the scene. She stated she told the officer that her father stabbed her mother with a knife. She denied telling the officer that her father was armed with a screwdriver. Thus, the defendant established a foundation for the admission of the police report into evidence. The trial court erred when it refused to admit the police report into evidence and when it did not allow the jury to directly learn from the police report of Nikia Arrington's inconsistent statement to the investigating officer. However, the trial court's error is harmless. Confrontation errors are subject to a harmless error analysis. State v. Boswell, 96-801 (La.App. 3 Cir. 2/12/97), 689 So.2d 627, 629, citing, Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The defendant was able to impeach Nikia's testimony through the testimony of Officer Thedy. The defendant questioned Officer Thedy during surrebuttal about the contents of his police report. Officer Thedy stated that Nikia told him her father stabbed her mother with a screwdriver. The officer also noted that the defendant was not armed with a knife when he was arrested. Thus, the evidence of Nikia's prior inconsistent statement was presented to the jury despite the trial court's refusal to admit the police report into evidence.
This assignment is without merit.

ASSIGNMENT OF ERROR 5:
In this assignment, the defendant contends that the state improperly used its peremptory challenges to exclude prospective male jurors from the jury. However, the defendant has failed to brief this assignment of error. Accordingly, this assignment of error should be deemed abandoned. State v. Bray, 548 So.2d 350, 354 (La.App. 4 Cir.1989); Rule 2-12.4, Uniform Rules, Courts of Appeal.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.