NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1398

STATE OF LOUISIANA

VERSUS

LESTER WILLIAMS

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 06-651
HONORABLE LORI A. LANDRY, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

AFFIRMED.

J. Phillip Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
Counsel for Appellee:
	State of Louisiana

Edward K. Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602
(337) 491-0570
Counsel for Defendant/Appellant:
	Lester Williams

**DECUIR, Judge.**

Defendant, Lester Williams, was convicted on one count of second degree murder, a violation of La.R.S. 14:30.1. The trial court sentenced him to life imprisonment.

<u>FACTS</u>

On or about February 20, 2006, Defendant beat and strangled his wife, Cynthia Williams, until she died.

**SUFFICIENCY OF THE EVIDENCE**

Defendant asserts that the circumstantial evidence was insufficient to prove that he possessed the specific intent to kill his wife, or in the alternative, "the evidence was insufficient to establish the elements of second degree murder."

Second degree murder is defined as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1(A)(1).

In *State v. Surratt*, 05-1406, pp. 22-23 (La.App. 3 Cir. 6/7/06), 932 So.2d 736, 749, *writ denied,* 06-2100, 06-2102 (La. 6/1/07), 957 So.2d 165, this court noted:

> More importantly, the supreme court has recently spoken to the scope of appellate review in criminal cases where convictions are supported by circumstantial evidence. In *State v. Pigford,* 05-0477, pp. 5-6 (La.2/22/06), 922 So.2d 517, 520-21, in reversing the second circuit and reinstating the trial court's verdict, the supreme court wrote:
>
>> However, the pertinent question on review was not whether the appellate court found that defendant's hypothesis of innocence offered a reasonable explanation for the evidence at trial but whether jurors acted reasonably in rejecting it as a basis for acquittal. In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v.*

*Captville*, 448 So.2d 676, 678 (La.1984). This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder. *State v. Robertson,* 96-1048, p. 1 (La.10/4/96), 680 So.2d 1165; *State v. Lubrano,* 563 So.2d 847, 850 (La.1990). A reviewing court may intervene in the trier of fact's decision only to the extent necessary to guarantee due process of law. *State v. Mussall,* 523 So.2d 1305,1310 (La.1988).

On February 20, 2006, about 7:15 p.m., Cheryl Williams, Defendant's niece, arrived home and found Defendant looking for her mother. He told her that his wife, Cynthia, had been sick all day, vomiting. But now she was not breathing. He did not want his niece to call 911 when she offered to call. When Ann Thibodeaux, Defendant's sister, and Ms. Williams' mother arrived home, she called the police.

Ms. Thibodeaux testified that on the morning of February 20, she had run an errand. When she arrived back home, she found that Defendant had left a message on the answering machine: "[G]ood morning, little sister, this me, big brother. I'm just calling, nothing happened, I'm just calling." She found this call to be strange. Ms. Thibodeaux testified that after she called the police that evening, she waited before she went to Defendant's house until she was sure the police would already be there.

Darren Denise, a sergeant with the Iberia Parish Sheriff's Office, responded to the call. Defendant met him at the door and told him that the victim had been throwing up all day. He stated that she had stopped breathing about two hours prior to the sergeant's arrival. He told the sergeant that he had gone to his sister's house to tell her about the victim. Sergeant Denise thought this was odd and asked him if his cell phone worked and Defendant told him that it did. The victim was found naked, lying on a bare mattress in the bedroom.

2

Robert Green, a detective with the Iberia Parish Sheriff's Office, made a DVD of the crime scene and took photographs. The DVD was shown to the jury. He located several blood splatters on doorframes and on the wall in the bathroom and in the bedroom. He collected samples of the blood, which ultimately proved to be the victim's blood.

An investigator from the Iberia Parish Coroner's Office, Ricky Eskind, conducted an initial, external examination of the body at the crime scene. He was qualified by the trial court as an EMT and expert in death investigations. He testified that the body had several "remarkable contusions or bruising." There was a contusion at the corner of her mouth. There was a "blood line at the gum line," bruising and swelling along the left side of the neck at the top of the shoulder, bruising in the pelvic area, and bruising on her upper left arm. There was also some bruising on one of her legs. He testified that most of the bruising was red in color which indicated that they were inflicted within a few hours before she died. He determined that the victim had been dead any time from two to twenty-four hours prior to his examination.

Dr. Collie M. Trant, Iberia Parish Coroner, performed the autopsy on the body of the victim. He testified that the victim had small tears or lacerations on the inside of her lips, as if the lips were compressed or crushed against her teeth. She also had curved, linear abrasions on the skin of her face, which the doctor explained were consistent with fingernails being pressed against her face. Because this type of injury is consistent with strangulation, the doctor conducted an internal examination of the victim's neck and throat. He testified that when the neck was opened, "there were bruises everywhere in the tissues inside. Probably, thirty, maybe fifty, separate

3

bruises scattered through those tissues, several of them being over the carotid arteries." While generally strangulation causes tiny blood vessels in the eyes to break, called petechiae, the eyes of the victim did not display such results. However, strangulation can also cause tiny blood vessels in the skin of the face to break, which was exhibited on the victim's face. The doctor also noted that the hyoid bone in the neck was not broken, which often happens during strangulation.

Further, there were several ribs fractured, two in the front of the victim's body and five in the back, next to the spine. Portions of the ribs were shattered into tiny pieces which had cut through the chest cavity wall. There were also old fractures. The doctor testified the injuries were consistent with a violent blow, more than just falling on the floor – something like stomping. Finally, the doctor found that the victim had a blood/alcohol content of .02 percent, indicating that she had consumed alcoholic beverages at some point shortly before she died. The doctor opined that the cause of the victim's death was manual strangulation.

Jeff Credeur, a detective with the Iberia Parish Sheriff's Office, and Scott Hotard, supervisor of detectives with the Sheriff's Office, investigated and interviewed Defendant the evening of February 20, and again the next day. The two interview sessions were taped. During the interviews, Defendant consistently maintained that the victim had been throwing up all the night before and that day. He told the officers that the victim could not walk and kept falling down. He had to drag her from the bedroom to the bathroom and back several times and had to hold her head over the toilet. He said that he was also sick and appeared to throw up into a wastebasket twice during the first interview. During the interviews, Defendant

4

admitted that he and the victim had been drinking, both hard liquor and beer, and that he had been home alone with her for two days prior to her death.

Detective Hotard testified that after the second interview, as he was preparing to have Defendant sent back to jail, Defendant made the statement that he had thrown the victim onto the bed and that she had hit the side of the bed with her chest. He said he had struck her face and then said, "I didn't mean to kill my wife."

The State presented evidence of past physical violence Defendant had committed against the victim, starting in 1999, when he was charged with simple battery and, on December 8, 2000, sentenced to fifteen days in jail.

Jeremy Hatley, a patrol sergeant with the Iberia Parish Sheriff's Office, testified that he responded to a domestic abuse call at Defendant's residence, which resulted in Defendant pleading guilty to domestic abuse battery on January 10, 2004. The sergeant testified he found the victim alone with Defendant, who was in possession of a shotgun. The officer testified that he could see that the victim had been severely beaten around the face. Photographs of the victim were shown to the jury.

Either shortly before or after this incident, Scott Colostio, a lieutenant with the Sheriff's Office, had responded to a domestic abuse call at Defendant's residence and found Defendant in possession of shotgun shells and the victim beaten. On January 16, 2004, Defendant pled guilty to aggravated assault. He was sentenced to one hundred and twenty-five days in jail, with all but forty-seven days suspended. His firearms were forfeited and destroyed.

On December 23, 2004, Defendant was charged with second degree battery of the victim. He was convicted and sentenced to five years at hard labor, suspended,

5

five years supervised probation, and other general and special conditions, including having no contact with the victim.

Jamie Legnon, Defendant's probation officer at this time, testified that on January 6, 2006, Defendant was again charged with domestic abuse battery of the victim. She testified that while Defendant pled guilty to the offense on February 13, 2006, the trial court did not revoke his probation. Rather, the trial court sentenced him to fifty-six days in jail, with credit for time served, and released Defendant with the provision that he have no contact with the victim and that he live with his mother. The victim's death occurred one week later.

In brief and at trial, Defendant argued that had the police investigated his assertion that the victim had been sick, the evidence would have shown that the injuries received by the victim were a result of Defendant's attempts to help her from bed to bathroom when she had to vomit. He argues that the police made no effort to verify his version of the events by testing spots on the rug and mattress for vomit. He contends that the police made no effort to inform the coroner that the victim had been ill, thus the coroner did not look for an illness or disease that could have killed her when he performed the autopsy. Defendant argues that despite rigorous interrogation by the detectives, he stuck to his contention that the victim was sick and that any injuries perceived on her body were due to him trying to help her.

Both detectives stated that though the victim may have been ill, because the coroner had determined her death was caused by manual strangulation, they did not think the fact that she had been vomiting was relevant evidence.

In brief, Defendant points to his brother's testimony that he had seen Defendant and his wife around noontime on February 17, 2006. The victim appeared to be in

6

good shape and the couple were laughing and joking. He also testified that on the morning of February 20, he and their mother, Pearl Bernard, went to Defendant's house. He said that he knocked several times and called Defendant on his cell phone. When there was no response, they turned to leave, but Defendant appeared at the door and invited them in. They sat at the kitchen table for a few minutes. Defendant told them that the victim was resting, and asked Ms. Bernard to check on her, but they had to rush off, so they never saw the victim that day.

At the sentencing, during argument on his motion for post verdict judgment of acquittal, Defendant argued that because all the evidence was circumstantial, the State had not "removed every reasonable hypothesis of innocence under the criminal code as is required in order for a verdict to be returned of guilty[.]" "Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts." *State v. Cochran,* 09-85, p. 10 (La.App. 5 Cir. 6/23/09), 19 So.3d 497, 504, *writ denied,* 09-1742 (La. 3/26/10), 29 So.3d 1249. The circumstantial evidence rule is: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. Furthermore, the State must prove that Defendant had the specific intent to kill or inflict great bodily harm. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific intent can be inferred from the circumstances presented including the extent and severity of the victim's injuries. *State v. Durand,* 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, *writ denied,* 07-1545 (La. 1/25/08), 973 So.2d 753.

7

In the current case, we find that the State met its burden of proof and that the finder of fact rejected Defendant's hypothesis of innocence. The facts of the case showed that Defendant exhibited a continuous conduct of violence against his wife. He was admittedly alone with his wife at the time she died, within days of again being convicted of domestic abuse and ordered to have no contact with her. The victim's body was freshly bruised, particularly in the neck area. It was established that the cause of death was manual strangulation. Defendant's contention that the bruises were a result of him dragging her from the bedroom to the bathroom as she was throwing up does not explain the several broken and shattered ribs, which testimony established occurred shortly before she died. Defendant's intent to inflict at least great bodily harm is exhibited by the severity of the injuries. The jury heard extensive testimony regarding whether the victim's illness may have been the cause of her death and obviously rejected Defendant's hypothesis of innocence.

> If a case involves circumstantial evidence, and a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails; and unless another one creates reasonable doubt, the defendant is guilty. *State v. Captville,* 448 So.2d 676 (La.1984). Moreover, it is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Leger*, 04-1467, pp. 2-3 (La.App. 3 Cir. 6/1/05), 907 So.2d 739, 744, *writ denied*, 05-2263 (La. 4/17/06), 926 So.2d 509, *cert. denied,* 540 U.S. 910, 127 S.Ct. 245 (2006), quoting *State v. Laws*, 95-593, p. 3 (La. App. 3 Cir. 12/6/95), 666 So.2d 1118, 1121, *writ denied*, 96-89 (La. 9/13/96), 679 So.2d 102. *See also Surratt*, 932 So.2d 736.

There is no merit to this assignment of error.

## OTHER CRIMES EVIDENCE

Defendant argues that the trial court erred when it allowed the State to present other crimes evidence in its case against him. Louisiana Code of Evidence Article 404(B) provides:

> (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Defendant argues that none of the incidences of prior domestic violence involved strangulation. In the current incident, there were no guns involved as in the prior incidences, and the oldest incident was in 2004. He asserts that the admission of the other crimes evidence was prejudicial and had no probative value other than to show a probability that he committed the present act because he was a man of bad character. Accordingly, he argues that his right to a fair and impartial trial was violated.

In *State v. Rose,* 05-396, p. 16 (La.App. 4 Cir. 1/18/06), 925 So.2d 34, 43, quoting *State v. Arrington*, 97-2059, pp. 7-8 (La.App. 4 Cir. 4/21/99), 738 So.2d 1087, 1091, the fourth circuit discussed the use of evidence of other crimes to show intent:

> Before evidence of other crimes is admitted as proof of intent, three prerequisites must be satisfied: (1) the acts must be similar, (2) there must be a real genuine contested issue of intent at trial, and (3) the probative value of the evidence must outweigh its prejudicial effect. *State v.*

9

> *Romero*, 574 So.2d 330, 336 (La.1990); *State v. Kahey*, 436 So.2d 475, 488 (La.1983). In addition, there must first be clear and convincing evidence of the commission of the other crimes and the defendant's connection with them. *State v. Hatcher*, 372 So.2d 1024, 1033 (La.1979); *State v. Prieur*, 277 So.2d 126, 129 (La.1973), *State v. Gibson*, 511 So.2d 799, 801 (La.App. 4 Cir.1987), *writ denied*, 514 So.2d 1174 (La.1987).

The fourth circuit determined it was not harmless error to have admitted the evidence and reversed the conviction. However, the Louisiana Supreme Court disagreed with the fourth circuit, reversed the fourth circuit's ruling, and reinstated the conviction in *State v. Rose,* 06-402, p. 13, 15-17 (La. 2/22/07), 949 So.2d 1236, 1243-46, stating:

> Although a defendant's prior bad acts may be relevant and otherwise admissible under La. C.E. art. 404(B), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403. Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. *State v. Germain,* 433 So.2d 110, 118 (La.1983). As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *Id. See also Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997)("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

> . . . .

> As explained above, evidence of other crimes, wrongs or acts may also be introduced to establish proof of motive. For evidence of motive to be independently relevant, it must be factually peculiar to the victim and the charged crime. *State v. Lafleur,* 398 So.2d 1074, 1080 (La.1981). Additionally, in a case in which the State sought to elicit testimony as to defendant's motive, this court observed, "Clearly, evidence that defendant and his ex-wife, the person to whom defendant's alleged criminal conduct was directed, had had a poor marital relationship and that defendant had a bad temper was relevant as tending to show the commission of the offense...." *State v. Walker*, 394 So.2d 1181, 1184 (La.1981). *See also State v. Welch*, 615 So.2d 300, 303 (La.1993)("[T]he state could not place the circumstances of the offense in their proper context without reference to the nature of the

10

relationship existing between the victim and the defendant. . . . The primary purpose of the evidence [of prior acts of violence or threats of violence] was not to prove Welch's bad character but to illustrate the volatile nature of his relationship with the victim. . . .").

Similarly, in the current case, Defendant's prior acts of domestic abuse against his wife were independently relevant to show the volatile nature of the relationship between him and the victim. While Defendant argues that the prior abuses involved a gun, but no gun was involved in the current incident. We note that in the prior incidents, there was no actual testimony that Defendant was threatening his wife with a firearm. Furthermore, as noted above, following the second January 2004 incident, Defendant's firearm was ordered forfeited and destroyed. The evidence reflects that, in each prior offense, Defendant was ordered to stay away from his wife, but each time went right back to her and each time beat her without restraint. While the other crimes evidence was prejudicial, the probative value of the evidence was significant. While the victim's death may have been unintended, the infliction of grievous bodily harm certainly was not. As in *Rose,* 949 So.2d 1236, in the current case, the State could not place the circumstances of the offense in their proper context without reference to the nature of the relationship existing between the Defendant's wife and Defendant.

Considering the above jurisprudence and the facts of the current case, we find no merit to this assignment of error.

## PRIOR STATEMENTS OF VICTIM

Defendant argues that the trial court erred when it allowed prior statements of the victim into evidence, which denied him his constitutional right to cross-examine her.

11

During the interrogation of Defendant, one of the detectives read a statement made by the victim that Defendant had "beat her on three different occasions." Although the DVD had been redacted, the victim's statement was inadvertently left on the DVD for the jury to hear.

Defendant argued at trial that he had specifically requested that that particular portion of the DVD be excised. The State asserted that Defendant never asked for that portion of the DVD to be excised, thereby waiving any objection to the victim's statement as it was read to Defendant. However, Defendant argued that the trial court specifically ruled that the statements were not admissible and noted that the State indicated it had no intention to elicit the statements made by the victim in the previous cases.

In brief, Defendant argues that the statements were testimonial pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354 (2004) and, therefore, he was denied his constitutional right to confront a witness who testified against him. While discussing the *Crawford* decision regarding testimonial statements, the first circuit in *State v. Buckenberger,* 07-1422, p. 14 (La.App. 1 Cir. 2/8/08), 984 So.2d 751, 759, *writ denied,* 08-877 (La. 11/21/08), 996 So.2d 1104, stated:

> In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. U.S. Const. amend. VI. The confrontation clause bars "admission of *testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004) (emphasis supplied). Statements are *nontestimonial* when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Statements are *testimonial* when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266,

2273-2274, 165 L.Ed.2d 224 (2006). Mistaken application of the rule of *Crawford* is subject to harmless error analysis. *State v. Cunningham*, 2004-2200 (La.6/13/05), 903 So.2d 1110, 1119.

In the current case, Defendant relied on La.Code of Crim.P. art. 770, which provides in pertinent part:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

> . . . .

> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]

The trial court reviewed the list of requested redactions provided and reviewed Article 770 and determined that although there had been an agreement to redact the statements, there were no grounds upon which to declare a mistrial. The trial court then specifically ordered that Detective Hotard, who had conducted that portion of the interrogation, not refer to the statements during his trial testimony. This court has noted that a testifying police officer is not an "official" within the meaning of Article 770(2). *State v. Giles,* 04-359 (La.App. 3 Cir. 10/6/04), 884 So.2d 1233, *writ denied,* 04-2756 (La. 3/11/05), 896 So.2d 62.

However, La.Code Crim.P. art. 771 provides that a trial court may grant a mistrial when a witness makes a remark or comment that "is irrelevant or immaterial and of such a nature that might create prejudice against the defendant." In this case, upon request of the accused, the trial court had the option of either admonishing the jury, or if the admonishment is not sufficient, to declare a mistrial. "Mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused." *State v. Smith*, 430 So.2d 31, 44 (La.1983). Furthermore, a trial judge has

13

broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial and his ruling denying a mistrial will not be disturbed absent an abuse of discretion. *State v. Narcisse,* 426 So.2d 118 (La.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 202 (1983).

The trial court, in the current case, found that the victim's statement read to Defendant during the interrogation was not so prejudicial that he was denied a fair trial. Finally, even if we consider the statements made by the victim to be testimonial in nature and, therefore, Defendant was denied his right of confrontation of the witness, that the accidental admission of the statements was harmless error.

An error is harmless when it can be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967). The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081 (1993); *State v. McQuarter*, 00-1553 (La.App. 4 Cir. 6/6/01), 788 So.2d 1266. *See also State v. Willis,* 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied,* 06-186 (La. 6/23/06), 930 So.2d 973, *cert. denied,* 549 U.S. 1052, 127 S.Ct. 668 (2006). As noted above, Defendant's prior convictions which resulted from the domestic abuse of his wife were deemed admissible and, therefore, inadvertently playing the section of the DVD that contained the victim's statements that Defendant beat her most assuredly did not attribute to the verdict.

There is no merit to this assignment of error.

## TIME LIMIT ON CLOSING STATEMENTS

Defendant asserts that the trial court erred when it limited his closing statement to one and one half hour. The trial court advised defense counsel and the State that they would have one hour and thirty minutes in which to present their closing statements to the jury. There were sixteen witnesses presented at trial and approximately four and one-half days of testimony.

> All matters pertaining to the conduct of the trial are within the sound discretion of the trial judge. La. Const. Art. 5, § 1; LSA-C.Cr.P. art. 17; *State v. Soler,* 93-1042, p. 22 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1081, *writ denied,* 94-1361 (La. 11/4/94), 644 So.2d 1055. A trial judge has "the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." LSA-C.Cr.P. art. 17. As such, the trial judge has great latitude in controlling the duration and limiting the scope of closing arguments. *State v. Farhood*, 02-490, pp. 28-29 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 235.

*State v. Smallwood*, 09-86, p. 12 (La.App. 5 Cir. 7/28/09), 20 So.3d 479, 487-88, *writ denied*, 09-2020 (La. 9/24/10), 45 So.3d 1065.

In *Smallwood*, the fifth circuit noted there were twelve witnesses and found that forty-five minutes was adequate time for defense counsel to sum up his arguments. *Id.*

In the instant case, Defendant used one hour and twenty-three minutes to argue his case, sixty-four pages of transcript. Defendant's counsel addressed each witnesses' testimony and reiterated in detail his cross-examination of Dr. Trant's and Detectives Credeur's and Hotard's testimonies. His argument to the jury was exactly the argument presented in the insufficient evidence allegation discussed above. Defense counsel reminded the jury of their civic duty, discussed all of the responsive verdict options, and even pointed out family members in the courtroom. Although in brief, Defendant asserts only that the time constraint overshadowed defense

15

counsel's argument and hindered his thought process, we found no indication of such after reviewing the sixty-four pages of closing argument.

Furthermore, Defendant does not set forth a particular way in which he was prejudiced by the time limitation or a specific argument he could not address. *See State v. Galloway*, 551 So.2d 701 (La.App. 1 Cir. 1989), wherein a ten minute limitation on defense counsel's closing argument was not found to be an abuse of the trial court's discretion when the accused did not show specific prejudice, and *State v. Carney*, 476 So.2d 364 (La.App. 4 Cir. 1985), wherein there was no showing of prejudice in the trial court's one hour limitation on closing arguments.

For all the above reasons, there is no merit to this assignment of error.

## EXPERT TESTIMONY

Defendant asserts that the trial court erred when it allowed Dr. Trant to testify as a bone density expert without first being qualified as one.

During trial, the coroner testified regarding the victim's broken ribs. He had stated that type of injury required a "significant amount of trauma." When asked by the State, the doctor stated that the victim did not suffer from osteoporosis, thin bones. Defendant did not object to this statement. Later, during cross-examination, Defendant asked the doctor if he had tested the victim's bones for osteoporosis. The doctor answered no, explaining that there was no real test for osteoporosis on a dead person other than actually examining the bones.

Following this testimony, a very long and vigorous exchange took place between defense counsel and the doctor as to why he did not take the body to a hospital and have it scanned for a bone density indicator, an exchange which often involved the trial court attempting to move the testimony along. The exchange

16

culminated with the doctor explaining that he could determine osteoporotic bones because he had extensive experience cutting through bone in his job as a forensic pathologist.

However, at no time during the above examination did Defendant object to the coroner's testimony or request a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) hearing.  Accordingly, because Defendant did not make a contemporaneous objection to the testimony, he cannot raise it on appeal after the verdict.  La.Code Crim.P. art. 841.

## DECREE

For the foregoing reasons, Defendant's conviction is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal, Rule 2–16.3.

17