476 So.2d 364 (1985)
STATE of Louisiana
v.
Rodney CARNEY.
No. KA-2276.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 1985.
*365 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Julia S. Coley, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
*366 Martin E. Regan, Jr., New Orleans, for defendant-appellant.
Before GARRISON and ARMSTRONG, JJ., and PRESTON H. HUFFT, J. Pro Tem.
ARMSTRONG, Judge.
The defendant, Rodney Carney, was charged with the offenses of aggravated rape, attempted aggravated rape, and aggravated burglary and was found to be guilty as charged of each offense. On the charge of aggravated rape, he was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, and on the charge of attempted aggravated rape, he was sentenced to life imprisonment at hard labor. On the charge of aggravated burglary, he was sentenced to fifteen (15) years at hard labor. The sentences were to run concurrently. It is from these convictions and sentences that defendant has appealed.[1]
The record reflects that during the month of October, 1982, Trina and her sister Carol resided at 2130 Willow Street. 2130 Willow is one-half of a shot-gun double. Stephanie lived at 2128 Willow, the other half of the double.
On October 13, 1982, Trina saw defendant at a store on the corner of Willow Street and Jackson Avenue. Trina was well acquainted with defendant because they had lived in the same building when they were children. Defendant called to Trina so she went over to see what he wanted. He asked her for a date, she turned him down. The defendant then got in his car and drove away.
Stephanie was standing on her front steps during the early evening hours of October 13th. She saw defendant leave the store and get in his car. He drove to the front of her house and asked her name. He also asked her several questions about Trina and Carol. Defendant asked Stephanie if she wanted to go out with him; she refused. Stephanie went inside her house and defendant left.
Early in the morning on October 14, 1982, Stephanie was sleeping when she heard knocking on her door. She opened the door and saw defendant standing there. He told her that he had been driving in the area and stopped because he thought he saw lights on in her house. Defendant asked Stephanie if she was "horny" like him. She became nervous and told defendant that her boyfriend was coming over. Defendant left.
Shortly thereafter, Trina was asleep on the living room couch and was awakened by someone rubbing her leg; it was the defendant. He put a knife to her throat and told her to be quiet. He tied her hands and neck together and then tied her to the sofa leg with an extension cord. He covered her eyes with a dishcloth and put toilet tissue in her mouth. Defendant then engaged in sexual intercourse and cunnilingus with Trina.
Defendant then went into Carol's room and woke her up. Carol initially thought defendant was her boyfriend, but realized she was mistaken when defendant put a knife to her throat. Carol started to turn her head but defendant told her "don't look, don't turn around, or I'll kill you and your baby." Defendant told Carol he wanted her television and "record box." She told him to take what he wanted and leave. Defendant put the knife to her temple and told her he wanted to have sex. Defendant then put the knife on the night stand and began to unzip his pants. Carol then grabbed the knife and began to struggle with defendant. The knife hit Carol's son, enabling defendant to take the knife. They continued to struggle, traveling from the bedroom to the kitchen. Carol grabbed the knifeblade and broke the knife in her hand. Defendant pushed her away from him and ran toward the back door.
Carol began running toward the front door and met Trina who had succeeded in *367 getting free. Carol told her to get the baby. Carol realized that the knifeblade was embedded in her hand so she pulled it out and tossed it onto the floor. She then opened the front door and saw the defendant running out of the side gate.
Stephanie testified that she heard the struggle from her side of the building. She ran to her front door and saw defendant running away. She also heard Carol yelling "help" and Trina yelling "he raped me." Stephanie ran to a neighbor's house and told the neighbor to call the police.
The victims' mother and their sister, Leatha, arrived on the scene while the victims were waiting for the police. Trina, Carol and Stephanie appeared to be nervous and were crying. The house was in disarray. An extension cord and knife blade were on the living room floor. After the police arrived, the victims' mother and a police officer went looking for the knife handle, but they could not find it. Later that day, she found the knife handle approximately one block from her daughters' home.
When the police arrived, Carol and Trina informed them that Rodney Carney had broken into their house. Leatha and Stephanie went with Officers Dunn and Varuso to defendant's residence at 1212 Clara Street and identified defendant as Rodney Carney. The officers arrested defendant.
At trial, Trina testified that she did not consent to the act of intercourse or cunnilingus. She also testified that she was not married to defendant. Dr. Zelernack examined Trina at Charity Hospital later in the day of October 14, 1982. He testified that there were observable red areas on her hands. It was stipulated that Patsy Daniels, laboratory technician at the coroner's office, examined vaginal swabs taken from Trina and that the test results were positive for seminal fluid and spermatoza. It was also stipulated that Officer Sisson tested defendant's clothing seized at arrest and found seminal fluid on defendant's underwear.
At trial Carol testified that she did not invite defendant into her house. She also testified that she was not married to defendant. Dr. William Long testified that he examined Carol on October 14, 1982 and found multiple lacerations on her right palm, some of which required stitches.
At trial, Officer Valteau testified that he was called to 2130 Willow Street on October 14, 1982. He observed the house in disarray. He confiscated a knife blade and an extension cord found lying on the living room floor. He also lifted seven fingerprints off a window on the left side of the house. Officer Burns testified that four of the seven prints were identified as belonging to defendant. Three were unidentifiable because of their poor condition. It was also stipulated that Officer Krone examined the knifeblade which had been confiscated at the victims' residence and the handle found by the victims' mother and that they fit together. It was further stipulated that from the bottom of the living room window to the ground was five feet four inches.
Defendant took the stand and testified that Trina invited him into the house on October 14, 1982. He had left his car running in the street, so he went to park it. When he returned to Trina's apartment, the door was shut. He tapped on the side window and returned to the front door. Trina let him in the front door. They smoked marijuana and then engaged in intercourse. Trina asked him for twenty dollars. Defendant told her that he didn't have it and started to get dressed. Carol then came out of the back room with a knife. Defendant caught her by her wrist and took the knife away. She grabbed the knife and screamed. Trina began hollering. Defendant ran out of the house with a knife handle in his hand.
We have reviewed the records for errors patent and have found one. The minute entry for sentencing indicates that defendant was given a life sentence for count two, attempted aggravated rape. However, R.S. 14:27(D) provides:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not *368 more than fifty years. (Emphasis added).
Aggravated rape is punishable by life imprisonment at hard labor. LSA-R.S. 14:42. Thus, the maximum sentence allowed by law for attempted aggravated rape is not more than fifty years. Accordingly, the sentence imposed on the attempted aggravated rape charge is erroneous.
In accordance with State v. Raymo, 419 So.2d 858 (La.1982), we will review the sufficiency of evidence to support the conviction, even though it was not specifically alleged as error. The standard to be used by the appellate court is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Summit, 454 So.2d 1100 (La.1984); State v. Fuller, 414 So.2d 306 (La.1982).
In count one, defendant was convicted of aggravated rape, which is defined by LSA-R.S. 14:42 in part as anal or vaginal sexual intercourse that is deemed to be without consent as the victim is prevented from resisting because the offender is armed with a dangerous weapon. R.S. 14:42(3).[2] In the present case, Trina testified that defendant held a knife to her throat, tied her with an extension cord and engaged in sexual intercourse. She further testified that she did not consent to the act of intercourse and that she was not married to defendant. This is sufficient to support a conviction of aggravated rape. State v. Foley, 456 So.2d 979 (La.1984); State v. Sosa, 446 So.2d 429 (La.App. 4th Cir.1984), writ denied, 450 So.2d 361 (La. 1984).
In count two, defendant was convicted of attempted aggravated rape. An attempt occurs when a person, "having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the" accomplishment of the offense.[3] Here, Carol testified that defendant threatened her with a knife and told her he wanted sexual intercourse. Carol testified that she grabbed the knife from the nightstand after defendant put it down and started to unzip his pants. Carol testified that she was not married to defendant and that she did not give defendant permission to enter the house. This is sufficient to support a conviction of attempted aggravated *369 rape. State v. Carry, 459 So.2d 676 (La.App. 4th Cir.1984); State v. Elzy, 451 So.2d 1167 (La.App. 4th Cir.1984).
In count three, defendant was convicted of aggravated burglary. Aggravated burglary is the unauthorized entering of an inhabited dwelling with the intent to commit a felony if the offender is armed with a dangerous weapon, or, after entering, arms himself with a dangerous weapon or commits a battery while in the dwelling or in entering or leaving the dwelling. LSA-R.S. 14:60.[4]
In this case, both Trina and Carol testified that they did not give defendant permission to enter the residence. Defendant committed a felony by raping Trina and attempting to rape Carol. Defendant was armed with a knife which was taken from Carol's kitchen. This is sufficient to support a conviction of aggravated burglary. State v. Carry, supra.
Defendant first argues that the trial court erred in denying his motion for continuance. Immediately prior to trial defendant's court appointed counsel informed the court that the previous night defendant had retained private counsel, thus necessitating her withdrawal and a continuance. The trial court denied the request for a continuance as defendant's court appointed attorney was fully prepared for trial and defendant had been incarcerated for four months awaiting trial. Because the trial court denied the motion for continuance, defendant's retained counsel was forced to withdraw and his court-appointed counsel was reappointed.
It is well settled that a trial court's denial of a motion for continuance will not be disturbed on review absent a clear showing of an abuse of discretion and specific prejudice. State v. Simpson, 403 So.2d 1214 (La.1981); State v. Lee, 364 So.2d 1024 (La.1978); State v. Jackson, 362 So.2d 522 (La.1978). In Jackson, supra at 523, the court held:
It is not an abuse of the trial court's discretion to deny a continuance when the defendant has waited until the day of trial to request a continuance in order that he might attempt to employ counsel. Especially is this true in this situation where the defendant has filed an affidavit of poverty and requested appointed counsel. Furthermore, there is no claim that appointed counsel has not had the opportunity to properly prepare an adequate defense during the 28 days he had been assigned to the case.
In the instant case, the defendant had filed an application of poverty, and appointed counsel had over two months to prepare for trial. Moreover, defendant has made no showing of specific prejudice to him from the denial of his motion for continuance. Accordingly, this assignment of error lacks merit.
Defendant next argues that the trial court erred in overruling his objections to certain statements made by the prosecutor during voir dire. More specifically, in assignment of error number three, the defendant objects to the following:
... and the key element is that it is done without the victim's consent. Is that clear to everyone? Mr. Carney is charged with ...
BY MISS CHRISTOFFERSON:
Your Honor, I would object to the point of saying that the key element is that it is done without the victim's consent. There are certain subsections underneath that statute which each one is just as important, and I believe that is just a mis-statement of the law.
BY THE COURT:
... I will inform the jury of the proper elements of rape or attempted rape or *370 the aggravated burglary, Miss Christofferson. I will allow Miss Bane to make her determination as to what she believes what the key elements are, and I will let you do so also. I will note your objection.
In assignment of error number four, the defendant objects to the following:
BY MISS BANE:
If you have a doubt, after all the evidence is in, and after all the arguments have been made, you can give good reason for that doubt, and it is a grave doubt, or a serious doubt, founded upon reason that's reasonable doubt, do you understand that? But if it is a feeling, just kind of a gut feeling and you can't give any good reason for it, that is not reasonable doubt ...
BY MISS CHRISTOFFERSON:
Your Honor, I would object to that in that often times a gut feeling is the basis for a doubt which maybe cannot be formulated in words. But it is a it is a form of the doubt itself.
BY THE COURT:
I will overrule your objection, Miss Christofferson, and allow Miss Bane to voir dire the jury, and I will allow you to voir dire the jury. I will tell the jury what a reasonable doubt is.
"The trial judge is given wide discretion in ruling on the conduct of a voir dire examination and his ruling should not be disturbed unless there is an abuse of that discretion." State v. Peters, 441 So.2d 403, 406 (La.App. 4th Cir.1983); State v. Straughter, 406 So.2d 221 (La.1981). Here the trial court noted that defense counsel would be able to voir dire the jury. The court also noted that it would define for the jury the elements of rape and reasonable doubt. Defense counsel does not argue that the court's jury instructions on rape and reasonable doubt were either improper or insufficient to rectify any possible misunderstanding which may have been created by the prosecutor's statements. We find no abuse of discretion in the trial court's rulings.
Assignments of error numbers five, seven and nine concern the State's introduction in evidence of a statement allegedly made by defendant after his arrest. At trial, Officer Dunn testified that immediately after he'd informed defendant that he was under arrest, the defendant said, "I've been here all night." There is some questions as to whether defendant had been adequately informed of his Miranda rights prior to making the statement but, in any event, the statement was made spontaneously and not in response to questioning.
Such spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. Robinson, 384 So.2d 332, 335 (La.1980).
The defendant next argues that the State was allowed to rehabilitate its witness, Officer Varuso prior to his impeachment by the defense in violation of LSA-R.S. 15:484. Prior to trial Officer Varuso testified in two suppression hearings that Trina and Stephanie had shown him where defendant lived. At trial during direct examination, Varuso testified that Leatha and Stephanie had pointed out the defendant's residence. The prosecutor questioned the officer about this apparent conflict in his testimony, and the trial court allowed the witness to explain his mistake.
R.S. 15:484 provides that testimony to establish the credibility of a witness is not admissible until the credibility of that witness has been attacked. However, even if the trial court erred in overruling defendant's objection, such ruling is not reversible error absent a showing of prejudice to the defendant. State v. Lane, 414 So.2d 1223 (La.1982); State v. Boyd, 359 So.2d 931 (La.1978). Here, defendant has not shown any prejudice in the trial court's ruling. This assignment is without merit.
In Assignment of Error No. 10, the defendant asserts that the trial court committed prejudicial error in denying his motion *371 to view scene. The grant or denial of a motion to have the trier of fact view the scene of the crime is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. LSA-C.Cr.P. Art. 762(2); State v. Sweeney, 443 So.2d 522 (La.1983); State v. Moore, 432 So.2d 209 (La.1983).
In the instant case the jury was presented with numerous photographs and heard extensive testimony detailing the scene of the crime. The photographs clearly reveal the interior layout of the residence as well as the front exterior of the apartment. They further reveal the relationship between the living room window and the back door. After reviewing the photographs and testimony, we find no abuse of discretion in the trial court's denial of defense counsel's motion.
Finally, the defense argues that the trial court erred in limiting closing argument to one hour. Shortly before closing arguments were to begin, the trial court informed the prosecutor and defense counsel that their respective closing arguments would be limited to one hour. Defendant objected to this limitation on the grounds that defense counsel had not been given sufficient advance notice of the limitation to enable her to properly organize and present her argument within the time limit.
LSA-C.Cr.P. Art. 17 provides that all matters pertaining to the conduct of trial are within the discretion of the trial judge, and he has the authority and duty to require that the trial be conducted in an orderly and expeditious manner. State v. Kirkpatrick, 443 So.2d 546 (La.1983); State v. Reeves, 269 So.2d 815 (La.1972). The trial court may, in its discretion, limit the length of closing argument. Reeves, supra.
Defense counsel has asserted no specific prejudice to the defendant resulting from the time limitation, and given the length of time allotted by the trial court and the fact that the time limitation was applied equally to both State and defense, we find none. Accordingly, this assignment of error is without merit.
For the foregoing reasons, defendant's convictions are affirmed, as are the sentences in counts one and three, and the matter is remanded for resentencing on count two.
AFFIRMED AND REMANDED
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error numbers one, six and eleven. Accordingly, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[2] R.S. 14:42, at the time of the offense, read in part:

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
(4) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Rape is defined by LSA-R.S. 14:41 as the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent. Emission is not necessary; and any sexual penetration, however slight, is sufficient.
[3] Attempt is defined by LSA-R.S. 14:27 as:

A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
[4] R.S. 14:60 provides in part:

Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.