SANDRA CABRINA JENKINS, Judge.
11 Ladoia Smith was found guilty as charged of simple kidnapping, a violation of La. R.S. 14:44, and home invasion, a violation of La. R.S. 14:62.8. Smith was sentenced to five years for simple kidnapping and sentenced, as a multiple offender, to forty years for home invasion. Smith appeals his conviction for home invasion, arguing that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that he committed the essential elements of that crime. For the following reasons, we affirm Smith’s convictions and sentences.
RELEVANT FACTS AND PROCEDURAL HISTORY
Natasha Dorsey testified that, in the summer of 2010, she began a romantic relationship with the defendant, Ladoia Smith, but she ended the relationship with him in January, 2011. During the course of their relationship, they both lived on the westbank of New Orleans, and she and Smith often stayed together at his mother’s house or a friend’s house on the west-bank. When Ms. Dorsey ended the relationship with Smith, she went to live on the eastbank of New Orleans at Ms. Barbara Jackson’s house on Josephine Street.
li-Ms. Dorsey testified that Ms. Jackson’s house is a two story residence with two municipal addresses, 1004 and 1006 Josephine Street. There is an upstairs residence, a downstairs apartment, and a nursery daycare center in the downstairs portion of the house. Ms. Dorsey moved into the residence with her daughter, Brit-tani, and lived there with Ms. Jackson and her daughter, Tasmen, who ran the daycare program. Ms. Dorsey also worked as an assistant teacher at the daycare program that operated out of 1004/1006 Josephine Street.
Not long after Ms. Dorsey went to live on Josephine Street, an incident with Smith prompted Ms. Dorsey to file for an order of protection from Smith. On February 13, 2011, at approximately 2 p.m., Ms. Dorsey walked from the house on Josephine Street to a nearby store. She left her daughter Brittani at the house in the care of LaShawn Jackson, Ms. Jackson’s granddaughter, and Rochelle Peck. When Ms. Dorsey returned to the house, LaShawn informed her that “Brittani’s dad” had come to pick up Brittani. When Ms. Dorsey heard the description of the man, she knew that it was Smith, not Brittani’s father, who had picked up Brit-tani. Ms. Dorsey contacted Smith’s mother and she learned that Smith did have Brittani. Ms. Dorsey then called 911 to report that Smith had taken her daughter without her permission.
Officer Jamar Goines testified that he arrived at the house on Josephine Street at approximately 5 p.m. and obtained a statement from Ms. Dorsey. While Officer Goines was at the house, Ms. Dorsey *856 continued to contact Smith’s mother and a friend of Smith’s, Ashley Singleton, about the whereabouts of Smith and Brittani. Ms. Dorsey eventually arranged to get Brittani from Smith at Ashley’s house on the westbank. Officer Goines stayed at 1006 Josephine Street until Ms. Dorsey returned with Brittani at approximately 8:30 p.m. that evening.
|oTwo days after the incident, on February 15, 2011, Ms. Dorsey filed for an order of protection from Smith. In her application for the order of protection, Ms. Dorsey listed 1006 Josephine Street as her residence where she sought protection for herself and her daughter. The order was granted by the Orleans Parish Civil District Court on February 15, 2011,[1] and a temporary restraining order was issued, ordering Smith not to contact Ms. Dorsey personally or go within 100 yards of her.
At trial, Ms. Dorsey and Rochelle Peck each testified that, on the morning of February 18, 2011, they were standing outside the gated entry of 1004/1006 Josephine Street awaiting the arrival of children for the daycare program. While standing outside the gate, Ms. Dorsey heard someone calling her name from across the street and she saw Smith running towards the residence. Ms. Dorsey told Rochelle to run and they both ran inside the gate and into the residence. Rochelle ran ahead through the door and the hallway while Ms. Dorsey closed and locked the downstairs door to the residence behind her. As the women ran through the house, they heard a loud crashing sound behind them. They went out of the back door and climbed the back stairs leading to the upstairs residence, but the upstairs door was locked. Ms. Dorsey started to bang on the door to get the attention of Ms. Jackson who was in the upstairs residence. Rochelle ran down the stairs to go around the house and get in from another entrance. Rochelle saw someone come through the downstairs back door and go towards Ms. Dorsey, but she did not see the person clearly.
Ms. Dorsey testified that she was at the top of the stairs, when Smith came out of the downstairs back door and up the steps. Smith pulled her by the hair and began hitting her. Ms. Dorsey stated that she believed he was going to break her | Jaw or kill her if she did not go with him. Smith led her down the steps, back through the house, and out the front door onto Josephine Street. Smith continued to threaten her, hit her, and pull her hair as they walked down Josephine Street and turned onto Magazine Street.
Ms. Lilly Vuong testified at trial that, on the morning of February 18, 2011, she was standing on Magazine Street near St. Mary Street (two blocks from Josephine Street) when she saw a man and woman walking towards her. Ms. Vuong stated that the man was hitting the woman on the head and pulling her by her hair. Ms. Vuong did not intervene but waited for them to pass and then called 911. Ms. Vuong reported what she saw to the 911 operator and described the man as a black male wearing a yellow Hawaiian shirt and the woman as a black female with a purple shirt.
Detective Kevin Marshall testified that he was on patrol on the morning of February 18, 2011, when he responded to a 911 dispatch in the 1000 block of Josephine Street. He stated that the address was 1006 Josephine Street. When he arrived, he spoke with Ms. Barbara Jackson, Tas-men Jackson — who had not been present during the incident — and Rochelle Peck. From speaking with the women, Det. Mar *857 shall learned that Ladoia Smith entered the house and forcibly took Ms. Dorsey from the house. Det. Marshall broadcast over the radio a description of Smith and Ms. Dorsey. He stated that Smith was wearing a bright colored shirt and jeans and Ms. Dorsey was wearing a purple shirt. When Det. Marshall checked their names in the computer-assisted dispatch, he learned that Ms. Dorsey had an order of protection against Smith.
Det. Marshall also called the crime lab to take photographs of the scene at the residence. Det. Marshall observed that the front downstairs door appeared to 15be broken. He described it as a wooden door with nine window panes, six of which had been broken, particularly near the doorknob. Det. Marshall noted that there was some broken glass on the outside of the door, but most of the broken glass was on the inside of the residence, consistent with the glass being broken from the outside.
While Det. Marshall was still investigating the scene at 1006 Josephine Street, Tasmen Jackson received three or four phone calls from Ms. Dorsey. During each phone call from Ms. Dorsey, Det. Marshall was standing next to Tasmen and listening to the calls. He heard Ms. Dorsey crying and sobbing on the phone and a male voice in the background screaming at her and telling her what to say. Through the information gathered from the phone calls, Det. Marshall learned that Smith had taken Ms. Dorsey on the Mississippi River ferry to the westbank, and he learned the address of where they were heading. Det. Marshall contacted the Sixth District Police Station and communicated this information.
Detective Sandra Contreras testified that in February, 2011, she was a sergeant in the Sixth District and assigned to Persons Crimes. On February 18, 2011, she received a call from her supervisor about an ongoing investigation of Smith for the kidnapping of Ms. Dorsey. Det. Contreras received information that Smith was en route to 1914 Shallett Street on the west-bank. Det. Contreras responded to that location with three other detectives. As they arrived in the 1900 block of Shallett Street, Det. Contreras observed the persons matching the descriptions of Smith and Ms. Dorsey walking towards the address of 1914 Shallett. Det. Contreras instructed one of the other detectives to “grab” Ms. Dorsey, and secure her safety. Det. Contreras identified herself as a police officer |fiand ordered Smith to get on the ground. Smith complied and Det. Contreras took him into custody.
Ladoia Smith was charged by the Orleans Parish Grand Jury, through bill of indictment filed on April 21, 2011, with one count of home invasion of the inhabited dwelling “belonging to Natasha Dorsey,” and one count of aggravated kidnapping of Natasha Dorsey. On June 10, 2011, Smith entered a plea of not guilty to the charges in the indictment. Prior to trial, the State amended the indictment on the count of home invasion to state, “an inhabited dwelling located at 1004 and 1006 Josephine Street where a person Natasha Dorsey was present.” The State also amended the original charge of aggravated kidnapping to simple kidnapping.
On March 21, 2012, Smith elected a trial by jury. On March 28, 2012, a unanimous jury found Smith guilty as charged in a unanimous verdict. Smith filed a motion for new trial and motion for post-verdict judgment of acquittal; the trial court denied both motions on August 10, 2012. At the sentencing hearing on September 6, 2012, the trial court reviewed the pre-sentence investigation of Smith, stated the considerations and factual basis for imposing sentence, and sentenced Smith to five years for simple kidnapping and twenty *858 years without the benefit of parole, probation or suspension of sentence for home invasion.
After sentencing, the State filed a multiple offender bill against Smith. On September 17, 2012, Smith appeared before the trial court and entered a plea of guilty as a multiple offender on the charge of home invasion. The trial court accepted the plea, vacated the sentence previously imposed for Smith’s conviction on home invasion, and sentenced Smith to forty years with the first twenty to be |7served without the benefit of probation, parole, or suspension of sentence. Defendant now appeals.[2]
ERRORS PATENT
The record reveals one error patent in Smith’s sentence for home invasion. The trial court erred in imposing Smith’s sentence without benefit of parole, probation or suspension of sentence. Under the provisions of La. R.S. 14:62.8(B), a sentence for home invasion shall be imposed without benefit of parole, probation or suspension of sentence if, “at the time of the unauthorized entering, there is present in the dwelling or structure any person who is under the age of twelve years, is sixty-five years of age or older, or who has a developmental disability as defined in R.S. 28:451.2.” La. R.S. 14:62.8(B)(1). No such facts were alleged in the indictment, argued to the jury, or included in the jury instructions and verdict form. Under the facts of this case and in accordance with La. R.S. 14:62.8, the trial court erred by imposing restrictions on parole, probation, and suspension of sentence for Smith’s conviction for home invasion. Under La. R.S. 15:529.1(G), however, Smith’s sentence as a multiple offender shall be served without benefit of probation or suspension of sentence. We need not remand for re-sentencing, because this sentencing error is self-correcting under the provisions of La. R.S. 15:301.1(A). State v. Williams, 00-1725, pp. 14-15 (La.11/28/01), 800 So.2d 790, 801. In all other respects, we affirm Smith’s sentence and we find no other errors patent in the record.
| «DISCUSSION

Sufficiency of the Evidence

In his only assignment of error, Smith argues that the evidence adduced at trial is insufficient to support his conviction for home invasion because the State did not prove that he made unauthorized entry into an inhabited dwelling, as required by La. R.S. 14:62.8.[3] Smith argues that the State had the burden to prove that he entered a property used specifically as an inhabited dwelling, or used in whole or in part as a home; but, he contends the State only produced evidence that Smith entered a business — the daycare — located within the same building as an inhabited dwelling. Smith contends that the building at 1004 and 1006 Josephine Street contains a daycare center within the downstairs unit at 1006 Josephine Street, which functions solely as a business; but, the residence is in the upstairs unit at 1004 Josephine Street. Smith argues that the State did not produce any evidence that he entered into the upstairs unit of the building that *859 constitutes an inhabited dwelling. Therefore, Smith argues, the State failed to prove beyond a reasonable doubt an essential element of the crime of home invasion and the evidence is insufficient to sustain his conviction for that crime.
In reviewing the sufficiency of the evidence, Louisiana courts apply the constitutional standard set forth by the United States Supreme Court in Jackson v. Virginia. Under the Jackson standard, the appellate court must determine whether, after viewing all the record evidence in the light most favorable to the prosecution, any rational fact finder could have found the essential elements of the crime 9beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988); State v. Pleasant, 10-1533, pp. 5-6 (La.App. 4 Cir. 5/18/11), 66 So.3d 51, 55. Considering the record as a whole, if rational fact finders could disagree as to the interpretation of the evidence, the fact finder’s view of all the evidence most favorable to the prosecution must be adopted. State v. Egana, 97-0318, p. 6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 228. The fact finder is presumed to be rational in the determination of facts and credibility of witnesses, and it is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence absent a finding that the factual conclusions are clearly contrary to the evidence. State v. Jones, 97-2591, p. 7 (La.App. 4 Cir. 9/8/99), 744 So.2d 165, 169. In the absence of internal contradictions or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the fact finder, is sufficient to support a requisite factual conclusion. State v. Higgins, 03-1980, p. 6 (La.4/1/05), 898 So.2d 1219, 1226.
To convict Smith of home invasion, as defined in La. R.S. 14:62.8, the State had to prove beyond a reasonable doubt the following elements: (1) Smith entered 1004/1006 Josephine Street without permission or authorization; (2) that the place he entered was an inhabited dwelling or a place used in whole or in part as a home by another person; (3) that a person was present in the home when Smith made entry; and (4) Smith had the intent to use force or violence against a person in the home or to vandalize, deface, or damage the property. State v. Hart, 10-1614, p. 6 (La.App. 4 Cir. 11/2/11), 80 So.3d 25, 30.
Addressing Smith’s argument first, we consider whether, viewing all the evidence in a light most favorable to the prosecution, the jurors could find that | TnSmith entered into an inhabited dwelling, a place used in whole or in part as a home, at 1004/1006 Josephine Street. In order to satisfy the element of inhabitation at the time of entry, jurors must be able to conclude beyond a reasonable doubt that the place was being used in whole or in part as a home. “To determine whether the house was ‘lived in’ at the time of the unauthorized entry, it is proper to consider whether the occupant deemed the house to be her place of abode and treated it as such.” State v. Black, 627 So.2d 741, 745 (La.App. 2nd Cir.1993) citing State v. Conn, 420 So.2d 1123, 1125.
Ms. Dorsey testified at trial that she was living at 1006 Josephine Street on, and prior to, February 18, 2011. She also listed 1006 Josephine Street as her residence when she filed for an order of protection from Smith on February 15, 2011. The New Orleans Police Department incident recall and the police report from February 18, 2011, show the location of the incident as 1006 Josephine Street. In his police report, Det. Marshall recorded 1006 Josephine Street as the home address of *860 Natasha Dorsey and Barbara Jackson; it is also listed as the work address of Natasha Dorsey and Tasmen Jackson; but Tas-men Jackson’s home address is listed as 1004 Josephine Street. Det. Marshall further testified about the incident, stating that Ms. Dorsey was taken from her home at 1006 Josephine Street.
The record reveals that the addresses of 1004 and 1006 Josephine Street are used interchangeably to refer to the residence and the daycare, but the testimony is consistent on the fact that Ms. Dorsey was taken from the place where she lived and considered to be her home. Viewing all of the record evidence and testimony in a light most favorable to the prosecution, we find that the evidence was sufficient for the fact finders to conclude beyond a reasonable doubt that Smith |n entered into an inhabited dwelling, at 1006 Josephine Street, where Natasha Dorsey resided on February 18, 2011.
To satisfy the other essential elements of the crime of home invasion, the State had to prove that Smith entered the inhabited dwelling without permission or authorization and that he entered with the intent to use force or violence against a person inside or to damage property. The record reveals sufficient evidence and testimony to satisfy these requirements beyond a reasonable doubt.
Ms. Dorsey testified that, on February 15, 2011, she filed for an order of protection from Smith, “[s]o that [Smith] wouldn’t cause any harm to Brittani or myself.” In that order of protection, Smith was ordered not to go within 100 yards of Ms. Dorsey’s residence at 1006 Josephine Street. Thus, Smith was not permitted or authorized to go near the house on Josephine Street, but the evidence clearly supported the fact that he went on the property and inside the house. Ms. Dorsey also testified that, on the date of the incident, she saw Smith approaching her as she stood outside the house. She then ran inside the house and locked the door in order to keep him out. Ms. Dorsey and Rochelle Peck each testified to hearing a loud crashing noise after Ms. Dorsey locked the front door and as they ran toward the back stairs. Det. Marshall testified that his investigation of the scene revealed a broken door with several broken panes of glass consistent with the door being broken from the outside. Thus, the evidence and testimony reveals that Smith came onto the property, gained entry into the house without authorization or permission and caused damage to the property.
The testimony of Ms. Dorsey also reveals Smith’s intent to use force or violence against her after he gained entry into the house. She testified that he reached her on the back stairs, grabbed her, pulled her hair, and began hitting her. |12She stated that he continued to grab, pull, and hit her as they walked from the house and onto Magazine Street. Ms. Lily Vuong also testified that she witnessed Smith pulling and hitting Ms. Dorsey as they walked along Magazine Street. The eyewitness testimony corroborates Ms. Dorsey’s testimony and shows Smith’s intent to use force against Ms. Dorsey after he gained entry to the house.
Viewing all of the evidence and testimony, we find the evidence is sufficient for rational jurors to conclude beyond a reasonable doubt that Smith committed each essential element of the crime of home invasion. Despite Smith’s argument that he only entered the downstairs daycare and not an inhabited dwelling, the jury weighed the credibility of all witnesses alongside the evidence introduced at trial, and the jury’s findings and verdict were not contrary or irreconcilable with the evi *861 dence. It is not the function of this Court to assess the credibility of the witnesses or reweigh the evidence. State v. James, 09-1188, pp. 4-5 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996; State v. Vessell, 450 So.2d 938, 943 (La.1984). Considering all of the record evidence, both direct and circumstantial, in a light most favorable to the prosecution, we find the evidence sufficient beyond a reasonable doubt to sustain Smith’s conviction for home invasion.
CONCLUSION
For the reasons stated above, we affirm Smith’s convictions and sentences for simple kidnapping and home invasion.
AFFIRMED.

. Orleans Parish Civil District Court Case No. 11-1578.

. Smith does not assign error to his conviction or sentence on the charge of simple kidnapping. Finding no errors patent with that conviction or sentence, we affirm. La.C.Cr.P. art. 920.

. Home invasion is defined in La. R.S. 14:62.8 as,
the unauthorized entering of any inhabited dwelling, or other structure belonging to another and used in whole or in part as a home or place of abode by a person, where a person is present, with the intent to use force or violence upon the person of another or to vandalize, deface, or damage the property of another.