STATE OF LOUISIANA     *      NO. 2024-KA-0415

VERSUS                *

                           COURT OF APPEAL

ANTHONY N. GREEN SR.     *

                           FOURTH CIRCUIT

                     *

                           STATE OF LOUISIANA

               * * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 551-152, SECTION "F"
Honorable Robin D. Pittman
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Nakisha Ervin-Knott)

*LOBRANO, J., CONCURS IN THE RESULTS*

Jason Rogers Williams
District Attorney
Brad Scott
Chief of Appeals
Mary Glass
Chief of SAKI
William Dieters
Assistant District Attorney
Patricia Amos
Assistant District Attorney
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR STATE/APPELLEE

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073

      COUNSEL FOR DEFENDANT/APPELLANT

                                 **AFFIRMED**
                            **October 8, 2025**

NEK
DLD

Defendant, Anthony Green, Sr., appeals his convictions of first degree rape in violation of La. R.S. 14:42 and home invasion in violation of La. R.S. 14:62.8. For the following reasons, we affirm Defendant's convictions.

**PROCEDURAL HISTORY**

On December 14, 2020, the State filed a bill of indictment charging Defendant with one count of first degree rape against D.R.[1] in violation of La. R.S. 14:42 and one count of home invasion in violation of La. R.S. 14:62.8, all arising from an incident that occurred on April 21, 2020. Defendant pled not guilty to both counts, and the matter proceeded to a jury trial on March 4, 2024. At the conclusion of the trial, the jury unanimously found him guilty on all counts. On April 24, 2024, the district court sentenced Defendant to life imprisonment without the benefit of probation, parole, or suspension of sentence on the conviction for first degree rape, and it sentenced him to thirty years on the conviction for home invasion. This appeal followed.

---

[1] In accordance with La. R.S. 46:1844(W)(1)(a), we will refer to Defendant's victim by her initials to protect her identity.

1

## ERRORS PATENT

Prior to reviewing the merits of this appeal, we are tasked with examining the record for any errors patent in accordance with La. C.Cr.P. art. 920.[2] The record does not reveal any errors patent.

## ASSIGNMENTS OF ERROR

Defendant raises three errors on appeal:

(1) The trial court erred in denying the defense's request to instruct the jury of the mandatory life sentence associated with a conviction for first degree rape;

(2) The trial court erred in denying the defense's motion to exclude the audio recording of the photo identification procedure; and

(3) The State failed to present sufficient evidence to uphold his convictions.

The jurisprudence holds that when a defendant raises an error regarding the sufficiency of the evidence presented at trial, the appellate court should review that issue first. *E.g. State v. Marcantel*, 2000-1629, p. 8 (La. 4/3/02), 815 So. 2d 50, 55 (citation omitted). As such, we will first address Defendant's third assignment of error before moving on to the other two assigned errors.

## DISCUSSION

### *Assignment of Error No. 3: Whether the evidence was sufficient to support Defendant's convictions*

On appellate review, the role of the court is to review all of the evidence, both direct and circumstantial, in a light most favorable to the prosecution and

---

[2] An error patent is an error "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2).

determine whether a rational trier of fact could have found all the elements of the crime proven beyond a reasonable doubt. *E.g. State v. Pigford*, 2005-0477, pp. 5-6 (La. 2/22/06), 922 So. 2d 517, 520-21 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This includes inadmissible evidence that may have been erroneously admitted by the trial court. *E.g. State v. Hearold*, 603 So. 2d 731, 734 (La. 1992). Under this review, the appellate court does not reweigh the evidence or determine whether a witness is credible as those areas fall solely within the province of the jury. *State v. Jefferson*, 2023-0520, p. 13 (La. App. 4 Cir. 2/8/24), 401 So. 3d 1, 9 (citation omitted). Rather, the appellate court must accept the rational credibility determinations of the trier of fact, and it cannot disturb those determinations unless they are contrary to the evidence adduced at trial. *State v. Williams*, 2011-0414, p. 18 (La. App. 4 Cir. 2/29/12), 85 So. 3d 759, 771 (citations omitted). "A single witness' testimony, if believed by the fact finder, is sufficient to support a factual finding unless the testimony shows an internal contradiction or irreconcilable conflict with the physical evidence." *Jefferson*, 2023-0520, p. 13, 401 So. 3d at 9. Any conflicting statements regarding factual matters affect the weight of the testimony, not the sufficiency. *State v. Wells*, 2010-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So. 3d 303, 306 (citation omitted). If the appellate court finds that rational minds could disagree on the interpretation of the evidence, then the interpretation most favorable to the prosecution must be adopted. *State v. Robinson*, 2023-0058, p. 21 (La. App. 4 Cir. 9/4/24), 401 So. 3d 809, 824 (citation omitted).

### a. Count 1: First Degree Rape in violation of La. R.S. 14:42

First degree rape, for the purpose of this case, occurs when the sexual intercourse is deemed to be without the lawful consent of the victim because "the

victim was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution." La. R.S. 14:42(A)(2). Thus, to sustain a conviction for first degree rape, the State must prove that (1) an act of sexual intercourse occurred without the victim's consent and (2) the defendant prevented the victim from resisting through threats of great and immediate bodily harm (3) in conjunction with a show of power indicating he could act on those threats.

At trial, D.R. took the stand and recounted the events leading up to the crime. She testified that, on April 21, 2020, she was taking the trash outside of her home in Orleans Parish when Defendant drove past her residence. She recounted that Defendant stopped his car, and the two engaged in a friendly conversation. At the end of the conversation, Defendant asked if he could have a bottle of water, and she went inside to retrieve a bottle for him. When D.R. turned around to return outside, she saw the Defendant standing behind her. D.R. testified she told him that he was not allowed inside her house and asked him to leave. However, he did not. She asked him to leave multiple times and, in response, he told her not to "holler" or "tussle" with him. He lifted up his shirt, revealing a tattoo, and told her the tattoo meant he was a killer. D.R. swore she believed that statement and feared he would hurt her if she resisted him. Thereafter, Defendant "threw" D.R. over the arm of the sofa and held her hands behind her back—physically restraining her as he forced himself upon her. D.R. begged him to stop, but he did not.

After Defendant had finished and left, D.R. noticed that he had ejaculated inside her. D.R. testified that she wanted to "get [those] germs out of [her]" and douched with a concoction of bleach, vinegar, and hot water. Later that night, she disclosed what had happened to a family member, who encouraged her to report

4

the rape. The next day, she reported the crime to the New Orleans Police Department ("NOPD") and had a sexual assault examination performed at University Medical Center ("UMC"), wherein DNA swabs were taken from her person. D.R. relayed to the jury that she no longer felt safe after the rape so she relocated out of state to live with family, which is where she was staying months later when the NOPD contacted her about a potential suspect and when she formally identified Defendant in a telephonically recorded photo lineup.

From the outset, we note that the above testimony establishes all the elements to support a conviction of first degree rape. Namely, D.R.'s testimony reveals (1) she did not consent to the sexual intercourse, (2) Defendant threatened her to prevent her from resisting, and (3) Defendant followed up his threats with an apparent power of execution by revealing his alleged status as a killer and physically overcoming her. On appeal, Defendant advances two arguments as to why the evidence did not support the conviction of first degree rape—that is, the physical evidence did not establish that a rape had occurred, and alternatively, if a rape had occurred, then the evidence only supports a conviction for second degree rape. We address each argument in turn.

### i. Whether the evidence supported the finding that a rape had occurred

Defendant's main argument is that D.R.'s testimony is not supported by the physical evidence presented at trial. Defendant highlights the fact that D.R.'s medical records from her sexual assault examination at UMC revealed that she did not have any injuries from the assault. However, both Dr. Larick David[3], who had

---

[3] Dr. David was accepted by the trial court as an expert in emergency medicine such that he could testify on his opinion regarding injury trauma and its effect.

examined D.R., and Heidi Martin, the SANE Coordinator at UMC[4], attested that a lack of physical injury on a rape victim is not uncommon.[5]

Defendant also points to the Louisiana Crime Lab Analysis report, which analyzed the DNA swabs taken from D.R. during her sexual assault examination. Although D.R. testified that the Defendant ejaculated inside her, all the swabs were negative for seminal fluid and sperm.[6] In his case-in-chief, Defendant called George Schiro, who was qualified as an expert in the field of forensic serology and DNA analytics and had reviewed the Louisiana Crime Lab Analysis report. Mr. Schiro testified that he would expect to find seminal fluid and sperm from a DNA swab if a perpetrator had ejaculated, even if the victim had douched after the fact. However, on cross-examination, Mr. Schiro admitted that douching is a "delusional factor" that can dispose of components of seminal fluid, and he also admitted that bleach can get rid of evidence.

As noted earlier, our job on appellate review is to review all the evidence in a light most favorable to the prosecution and determine whether *any* juror could have found the elements of the crime to have been proven beyond a reasonable doubt. *E.g. Wells*, 2010-1338, p. 4, 64 So. 3d at 306 (emphasis added). Absent an irreconcilable conflict with the evidence, the testimony of a single witness is sufficient to sustain a conviction. *E.g. Jefferson*, 2023-0520, p. 13, 401 So. 3d at 9. This holds true even in the absence of corroborating physical evidence. *See*

---

[4] SANE stands for Sexual Assault Nurse Examiner. Ms. Martin was accepted by the trial court as an expert in sexual assault, sexual assault forensic exams, and trauma.

[5] At trial, the defense also questioned Dr. David regarding the lack of physical injury or symptoms from D.R.'s use of bleach and vinegar to douche. Although Dr. David did not document any physical signs from the homemade concoction in his report, he explained that the concentration of bleach used and the person's skin type are factors that can affect the manifestation of physical symptoms.

[6] Although the swabs were negative for seminal fluid and sperm, Defendant's DNA was found on the swab taken from D.R.'s neck.

*generally*, *State v. German*, 2012-1293, p. 14 (La. App. 4 Cir. 1/22/14), 133 So. 3d 179, 191-92 (citing *State v. Carney*, 476 So. 2d 364, 368-69 (La. App. 4th Cir. 1985)). While the lack of physical evidence from the assault, ejaculation, and homemade douche concoction may have conflicted with some of D.R.'s testimony, we cannot say that this created an irreconcilable difference as these discrepancies were later accounted for by the expert witnesses. Taking all this into account, we find that a rational juror could have found beyond a reasonable doubt that a rape had occurred.

### ii. Whether the evidence supported the lesser charge of second degree rape

Defendant argues in the alternative that the evidence was only sufficient to convict him of the lesser charge of second degree rape. Defendant asserts that the evidence did not establish that he had been armed with a weapon or used force or threats against D.R.

Second degree rape, in the context of this case, is defined as an act of sexual intercourse that occurs without the victim's consent "[w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." La. R.S. 14:42.1(A)(1). The only difference between first and second degree rape is the degree of force used and the extent to which a victim resisted. *State v. Jackson*, 437 So. 2d 855, 858 (La. 1983) (quoting *State v. Parish*, 405 So. 2d 1080, 1087 (La. 1981)). While a greater degree of force is needed to sustain a conviction for first degree rape, there is no "magic formula" to determine which forceful acts justify a conviction for first degree over second degree rape, and "[e]ach case must be examined on its own facts." *Id*. Notably, "the mere fact

the defendant was unarmed and the victim suffered no extensive physical pain or injury does not negate the possibility that [a first degree] rape occurred." *State v. Puckett*, 2002-997, p. 8 (La. App. 5 Cir. 1/28/03), 839 So. 2d 226, 231. The determination of the degree of force needed to distinguish a case between first and second degree rape is a finding that falls within the province of the jury. *Id.* (citing *State v. Cepriano*, 2000-213, p. 9 (La. App. 5 Cir. 8/29/00), 767 So. 2d 893, 899).

Here, the jury heard D.R. testify that Defendant entered her home without authorization, refused to leave, and told her not to fight him. They heard D.R. attest that Defendant flashed his tattoo and implied the tattoo meant he had killed people. Thereafter, he "threw" D.R. over the sofa, physically restrained her, and held her down as he committed the rape.

Defendant argues that D.R. never testified that he had a weapon, struck her, or made threats of physical harm. He specifically highlights D.R.'s testimony wherein he said he did not want to hurt her as evidence that he had no ill intent. Foremost, as noted previously, the absence of a weapon or injury is not a determinative factor between the crimes of first and second degree rape. *See Puckett*, 2002-997, p. 8, 839 So. 2d at 231. Further, Defendant mischaracterizes D.R.'s testimony. While it is true D.R. did not testify that Defendant made *explicit* threats, when looking at the totality of the circumstances, one can conclude, as D.R. did, that Defendant was implicitly threatening to hurt her if she resisted him. While Defendant told D.R. he did not want to hurt her, he followed up his statements with commands for her not to resist, an implication that he had killed people, and an overt use of force by throwing her to the sofa and restraining her. In light of all this, we do not find the jury's determination that Defendant's conduct justified a conviction for first degree rape to be unreasonable.

### b. Count 2: Home Invasion in violation of La. R.S. 14:62.8

The crime of home invasion is defined, in part, as a defendant's unauthorized entry into an inhabited dwelling being used as a home wherein a person is present inside and when the defendant intends to use force or violence upon that person. *See* La. R.S. 14:62.8(A). Thus, in this case, the State had the burden of proving that (1) Defendant entered D.R.'s residence without permission, (2) the residence was being used in whole or in part as a home, (3) D.R. was present in the home when Defendant wrongly entered, and (4) Defendant had the intent to use force or violence against D.R. *See generally, State v. Smith*, 2013-0143, p. 9 (La. App. 4 Cir. 5/21/14), 141 So. 3d 853, 859 (citing *State v. Hart*, 2010-1614, p. 6 (La. App. 4 Cir. 11/2/11), 80 So. 3d 25, 30).

At trial, D.R. testified that she was using the residence on Joliet Street as her home. When she realized that Defendant had followed her inside the house, she told him that he was not allowed to be in her home and asked him to leave multiple times. Instead of complying, he threatened her, forcefully restrained her, and raped her. Again, as established in the jurisprudence, D.R.'s testimony alone is sufficient to prove the crime so long as the jury finds her believable, which it did. Further, we cannot find any irreconcilable contradiction within her testimony or with the other evidence presented. Therefore, we find D.R.'s testimony sufficient to support Defendant's conviction for home invasion.

***Assignment of Error No. 2: Whether the trial court erred in denying the defense's motion to exclude the audio recording of the photo identification***

We now turn to Defendant's argument that the trial court erred in allowing the audio recording of D.R.'s identification of him to be played for the jury. D.R. identified Defendant as the perpetrator in a photo line-up that was conducted via a

9

recorded phone conversation with NOPD while she was living with her daughter in Texas. During the identification procedure, D.R. had a strong emotional reaction to seeing the Defendant's picture, and she can be heard sobbing in the audio recording. Defendant previously sought a writ on this exact issue, which this Court denied. *State v. Green*, 2023-0253 (La. App. 4 Cir. 7/28/23), 371 So. 3d 503, *rev'd on other grounds*, 2023-00918 (La. 10/31/23), 372 So. 3d 799. While appellate courts typically do not reconsider previous rulings on appeal, this policy does not apply in the case of a writ denial. *State v. Trung Le*, 2017-0164, p. 26 (La. App. 4 Cir. 4/11/18), 243 So. 3d 637, 661 ("[T]he law-of-the-case doctrine is not applicable to a writ denial, even when the denial is accompanied by language purporting to rule on the merits of the issue."). Therefore, we will address the merits of this assigned error.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. While relevant evidence is generally admissible, it may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." La. C.E. arts. 402 & 403. "A trial court has vast discretion in determining the relevancy of evidence and whether the probative value of relevant evidence is outweighed by any prejudicial effects; therefore, an appellate court will not reverse a trial court's ruling on such unless the trial court abused its vast discretion. *State v. Bell*, 2005-0808, p. 12 (La. App. 4 Cir. 12/6/06), 947 So. 2d 774, 781 (quoting *State v. Hall*, 2002-1098, p. 8 (La. App. 4 Cir. 3/19/03), 843 So. 2d 488, 496)).

Defendant advances two arguments to support his position that the audio recording should have been excluded. First, he argues that the recording was

prejudicial because his identity as the perpetrator was not at issue at trial and because witness testimony could have established the same. This argument does not have merit. Our review of the record shows that the defense never stipulated as to the identity of Defendant as the alleged perpetrator of the crime. As this Court previously stated, "Clearly, the victim's identification of [D]efendant as the person who raped her is relevant." *Green*, 2023-0253, p. 7, 371 So. 3d at 507. Further, the mere fact that evidence may be cumulative of other evidence does not render it inadmissible. *See State v. Davis*, 1992-1623 (La. 5/23/94), 637 So. 2d 1012, 1026 (citing *State v. Garrison*, 400 So. 2d 874 (La.1981)). Finally, while the audio recording does bolster other trial evidence regarding the Defendant's identification as the perpetrator, we find it also has relevancy independent of the identification. The credibility of every witness testifying in a criminal prosecution is a material issue. *State v. Winston*, 343 So. 2d 171, 172 (La. 1977). As D.R.'s credibility as a witness was naturally an underlying issue to be resolved by the jury, the audio recording was relevant in that it documented her initial reaction to Defendant's identification just months after the crime occurred. Thus, we find the audio recording was relevant and had probative value.

Defendant alternatively asserts that any probative value the audio recording did have was substantially outweighed by the danger of undue prejudice. Defendant argues that D.R.'s outburst on the audio recording prejudiced the jury against him. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *State v. Robinson*, 2021-0254, p. 9 (La. App. 4 Cir. 4/13/23), 382 So. 3d 198, 205 (quoting *State v. Simmons*, 2021-0547, p. 5 (La. App. 4 Cir. 11/24/21), 332 So. 3d 158,

161). While Defendant may not like D.R.'s reaction in the audio recording, we cannot say that it lured the jury into convicting him solely on the outburst and not on the evidence produced at trial. As we have already discussed, D.R.'s testimony alone was sufficient to convict the Defendant of first degree rape. Furthermore, the State "generally has a right to present evidence of a fact that a defendant would prefer to admit, so as to establish the 'human significance' of the fact and 'to implicate the law's moral underpinnings.'" *Green*, 2023-0253, p. 8, 371 So. 3d at 508 (quoting *Old Chief v. United States*, 519 U.S. 172, 187-88, 117 S.Ct. 644, 654, 136 L.Ed.2d 574 (1996)). Probative evidence is not inadmissible merely because it may upset or disturb a jury. *See id.* Taking this into account, we do not find the trial court abused its discretion by allowing the audio recording to be played at trial.

### *Assignment of Error No. 1: Whether the trial court erred in denying the defense's request to instruct the jury on the mandatory life sentence*

Finally, Defendant asserts the trial court committed reversible error by failing to inform the jury that the crime of first degree rape carries a mandatory life sentence.

We first note Defendant is correct that the trial court erred in failing to inform the jury of the mandatory life sentence. When a statute imposes a mandatory penalty, the trial court is required to inform the jury of the penalty after a request from the defendant. *E.g. State v. Jackson*, 450 So. 2d 621, 633 (La. 1984). Louisiana Revised Statute 14:42(D)(1) holds that "[w]hoever commits the crime of first degree rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." Thus, the trial

court was required to inform the jury about the mandatory life sentence when Defendant requested the instruction, and it erred in denying Defendant's request.

Despite this, we do not find that the trial court committed reversible error. When a trial court erroneously denies a special instruction on a mandatory penalty, the appellate court applies a harmless error analysis. *See generally*, *State v. Johnson*, 2001-2350, p. 10 (La. App. 4 Cir. 6/12/02), 820 So. 2d 1223, 1227-28 (citing *State v. Hooks*, 421 So. 2d 880, 886 (La. 1982)). An error is deemed harmless when "the verdict actually rendered was surely unattributable to the error." *State v. King*, 2015-0980, p. 16 (La. App. 4 Cir. 1/20/16), 186 So. 3d 264, 275 (quotation omitted); *see also State v. Johnson*, 1994-1379, p. 18 (La. 11/27/95), 664 So. 2d 94, 102.

The record shows that the jury was aware of the mandatory life sentence associated with the crime of first degree rape. Both the State and defense counsel mentioned the life sentence during their voir dire of the jury panel. Additionally, although the trial court had denied the request for a special instruction, defense counsel had the opportunity to bring the sentence to the jury's attention during closing argument but did not do so. When a defendant has the opportunity to explain the law on a mandatory penalty and fails to do so, a trial court's refusal to give a special instruction cannot be said to have been substantially prejudicial. *See Hooks*, 421 So. 2d at 887. Therefore, we find the trial court's failure to give a special instruction to be harmless.

## DECREE

For the foregoing reasons, we affirm Defendant's convictions.

**AFFIRMED**